**CITY PUBLIC SERVICE BOARD OF SAN ANTONIO, Appellant,**

**v.**

**Ira M. KARP and Annette Karp, Appellees.**

**No. 16219.**

Court of Civil Appeals of Texas, San Antonio.

July 11, 1979.

Charles J. Muller, III, San Antonio, for appellant.

Ralph M. Mayen, Mayen, Karp & Smith, San Antonio, for appellees.

## OPINION

MURRAY, Justice.

This is an easement case. Ira Karp and wife, appellees, brought an action for declaratory judgment against the City Public Service Board of San Antonio, appellant, to construe the extent and scope of a transformer easement on appellees' lot and for judgment that appellant is limited in its use of this easement to an underground transformer. Appellees also sought an injunction against appellant to permanently enjoin it from placing an aboveground transformer on this easement. The trial court, without a jury, granted judgment for appellees and restricted appellant's use of this easement to an underground transformer. From this judgment appellant perfected its appeal to this court.

On May 31, 1975, appellees purchased a lot with a one-family house on it in the City of San Antonio. Appellees' warranty deed expressly provides: "This conveyance is subject to transformer easement in northwest corner of lot as per plat recorded in Volume 5970, pages 198–199, Deed and Plat Records of Bexar County." The plat shows a five by five foot transformer easement drawn in the northwest corner of Lot 8, which is appellees' lot. It is labeled as follows: "5X5 Transf. ESMT." The plat also provides: "The owner of the land shown on this plat . . . dedicates to the use of the public forever all streets, alleys, parks, water courses, drains, easements and public places thereon shown for the purpose and consideration therein expressed."

In August 1968 appellant constructed within the designated easement area an underground transformer vault, installed an electric transformer, and covered the vault with an iron grate, which was level with the surface of the ground. Appellees' residence and eight other other residences in the subdivision receive electric service through this unit. The transformer has been continuously maintained and used on the easement from August 1968 to the date of trial.

The evidence reflects that because of the seepage of groundwater into the transformer vault, the transformer has not provided adequate electric service to the public since this type of transformer cannot withstand the corrosive effects of water and mud. Since 1973 this transformer has caused five outages of electrical service to the area it serves. Four of these outages were caused by water and mud in the vault, and on three of these four occasions it was necessary to completely replace the transformer unit. For these reasons, City Public Service Board established a policy to replace all of the underground transformers (approximately 3,500) presently in use in San Antonio. City Public Service Board decided to make the transformer on appellees' lot one of its first replacements because of the greater problems presented by this unit.

In February 1978 appellant advised appellees that it intended to construct within the easement a pad-mounted transformer to replace the underground transformer. The replacement unit is a box-shaped metal and plastic transformer that would be attached to a three and a half by three and a half feet concrete slab and would extend about forty inches above the level of the presently existing iron grate. Appellees notified appellant that the proposed construction would be in excess of their easement rights and refused to allow this construction. It was agreed between the parties that no construction would proceed and that appellees would commence an action for a declaratory judgment to obtain a judicial determination on the extent and scope of appellant's easement. The trial court, in entering judgment for appellees, held that because the easement was general, vague and indefinite, future use of the easement is restricted to its initial use.

In its conclusions of law the trial court, relying on *Dwyer v. Houston Pipe Line Company,* 374 S.W.2d 662 (Tex.1964) and *Pioneer Natural Gas Company v. Russell,* 453 S.W.2d 882 (Tex.Civ.App.—Amarillo 1970, writ ref'd n. r. e.), held that this

easement, which is general, vague, and indefinite on the extent of the burden to be imposed on appellees' lot, became fixed and definite after the installation and maintenance of an underground transformer with the acquiescence of all parties concerned for ten years. The trial court also held that appellant cannot construct within its easement the pad-mounted transformer or any other structure wholly or partially above ground level because it would exceed appellant's easement rights as fixed by the original construction of the underground transformer.

Appellant primarily contends that based on the undisputed evidence the trial court erred in not entering judgment for the City Public Service Board that its transformer easement, as a matter of law, could be used for the installation of a pad-mounted transformer. In response to appellant's contentions, appellees argue that this transformer easement (with the exception of the location and size of the easement) is general, vague, and indefinite in regards to the extent of the burden imposed on appellees' premises. The easement grant contains no express provision for future construction of any structure either below or above ground. Appellees, relying heavily on the holdings in *Dwyer* and *Russell* like the trial court did, further contend that when appellant installed the underground transformer in this indefinite easement with the actual or implied consent of the parties and maintained it for ten years, the scope, extent, and limits of the easement were fixed and made certain. Therefore, appellant may not now impose new, additional burdens upon appellees' premises by constructing a pad-mounted transformer on its easement.

The trial court's and appellees' reliance on *Dwyer* and *Russell* is misplaced. *Dwyer* involved the interpretation of an easement granted for a pipeline across Dwyer's property. The granting clause of the easement obtained by the pipeline company read, "First party . . . does hereby grant, sell and convey unto second party a right of way to lay, maintain, operate, repair, and remove a Pipe Line for the transportation of gas." The parties struck out the words "and remove" and also deleted a paragraph in the habendum clause giving the future right to construct additional pipelines over the servient owner's land for additional consideration. This instrument contained no specifications for the size of the pipeline or the width of the easement, nor did it contain a metes and bounds description of the easement. Because this limited easement was totally silent on its location and boundaries, the trial court held that the pipeline company had no right to remove an eighteen-inch pipeline and replace it with a thirty-inch line since it constituted an additional servitude.

In *Pioneer Natural Gas Company v. Russell* an easement was granted to West Texas Gas Company for a right-of-way of sufficient width across Russell's property to lay, maintain, operate, and remove parallel pipelines. This easement contained no express provision for the laying of additional pipelines in the future. Following the granting of this easement in 1928, West Texas Gas Company laid an eight-inch gas transmission line across the property. In 1968 Pioneer Natural Gas Company, the assignee of West Texas Gas Company, laid a ten-inch gas transmission line parallel to and about ten feet south of the eight-inch line. Pioneer Natural Gas did not obtain a written right-of-way easement from Russell to cover the ten-inch pipeline. Russell filed a trespass to try title suit against the gas company alleging that the laying of the additional pipeline was not authorized and thus constituted a trespass. The trial court granted Russell's motion for summary judgment. On appeal, the court of civil appeals, citing *Dwyer*, held that under this easement, which granted a right-of-way of sufficient width to permit grantee to lay and maintain parallel pipelines for the transportation of oil and gas, the grant became fixed and certain when the grantee laid the eight-inch pipeline in 1928. The gas company could not enlarge the grant forty years

later by laying the ten-inch pipeline. This easement also contained no specifications for the size of the pipeline or the width of the easement, nor did it contain a metes and bounds description of the easement.

Both *Russell* and *Dwyer* based their decisions on a rule enunciated in *Winslow v. City of Vallejo*, 148 Cal. 723, 84 P. 191 (1906). In *Winslow* the City of Vallejo, which owned and operated a water system, laid a ten-inch iron pipeline in 1893 across Winslow's land to convey water to the City from a reservoir fourteen miles away. This water line was laid across Winslow's land under a grant of a general right-of-way that had no specifications for the width and exact location of the easement. But allowed grantee to use as much land as was necessary to lay and maintain water pipelines on or near a presently surveyed line. About nine years later the city attempted to lay an additional fourteen-inch pipeline across Winslow's land. The Supreme Court of California noted that the conveyance was "general in its terms" and afforded "no basis for determining the number of pipes, their size, or their exact location." *Id.* 84 P. at 192. Consequently, the Court, in holding that the City of Vallejo did not have the right to lay the additional pipeline, based its decision on the following rule: "[W]here a grant of an easement is general as to the extent of the burden to be imposed on the servient tenement, an exercise of the right, with the acquiescence and consent of both parties, in a particular course or manner, fixes the right and limits it to a particular course or manner in which it has been enjoyed." *Id.*

■ This rule is inapposite here. In our case, the easement is not general, but is specifically defined in its location (northwest corner of lot 8) and size five by five feet). It is also limited in its purpose to a transformer easement. The trial court's holding that the easement is general, vague, and indefinite is erroneous as a matter of law. Therefore, appellant's easement rights were not fixed by the original construction of the underground transformer. *See Central Power and Light Company v. Holloway,* 431 S.W.2d 436 (Tex.Civ.App.—Corpus Christi 1968, no writ).

■ An easement owner, being the dominant tenant, is entitled to the free and undisturbed use of its property for the purpose of the easement. *Gulf View Courts, Inc. v. Galveston County,* 150 S.W.2d 872 (Tex.Civ.App.—Galveston 1941, writ ref'd). An easement granted for general purposes includes not only the use required at the time of the grant, but also the right to use the easement for any purposes connected with the use to which the property is being put. *Peterson v. Barron,* 401 S.W.2d 680 (Tex.Civ.App.—Dallas 1966, no writ). *Peterson v. Barron* also involved an easement that is general in its purpose, but specifically defined in its location. Here, an easement deed between the parties gave the grantee the right to construct, reconstruct, and maintain drainage and utility facilities within a specifically designated easement. Under this grant the court held that the grantee had the right not only to install a sewer, but also to use the area covered by the easement for other drainage and utility facilities, including a drainage canal.

■ The creation of an easement involves looking forward by those participating in its creation, to a future use by the dominant tenant that is not inconsistent with or repugnant to the creating instrument. Restatement of Property § 484, Comment a (1944). Comment "a" goes on to state:

> This use, by necessity, must be made under conditions somewhat different from those existing at the time of the conveyance. In the absence of language specifically negativing it, it will be assumed that the parties contemplated changes in the use of the servient tenement made necessary by the normal development in the use of the dominant tenement.

*Id.*

The grant in this case clearly gives the City Public Service Board the right to use

its easement for transformer purposes, which necessarily includes the right to install a pad-mounted transformer within the confines of its easement as a matter of normal development. Accordingly, the judgment of the trial court is reversed and rendered that City Public Service Board can replace within the boundaries of its easement the underground transformer with a pad-mounted transformer.