**PIONEER NATURAL GAS COMPANY, Appellant,**

**v.**

**Walter G. RUSSELL, Appellee.**

**No. 8008.**

Court of Civil Appeals of Texas, Amarillo.

April 13, 1970.

Rehearing Denied May 18, 1970.

W. N. Lampe and Jerry Hopson, Amarillo, Collard & Elliott, and Richard T. Collard, Friona, Crenshaw, Dupree & Milam, James H. Milam and R. K. Harty, Lubbock, for appellant.

Cowsert & Bybee, and Ray Cowsert, Hereford, for appellee.

JOY, Justice.

This is a suit in trespass to try title filed by the appellee Walter G. Russell against Pioneer Natural Gas Company. Walter Russell alleged that the construction by Pioneer Natural Gas of a pipe line across his property was not authorized and thus constituted a trespass. Pioneer Natural Gas answered "not guilty" on the grounds that it was the holder of an easement that au-thorized Pioneer to lay additional pipe lines and that Russell was estopped to deny Pioneer's right to lay an additional pipe line. The trial court granted Russell's motion for summary judgment and awarded Russell the title to and possession of the land and the pipe line. Pioneer Natural Gas has perfected an appeal to this court on three points of error.

The facts, which have been stipulated to by both parties, are as follows: Walter Russell is the owner in fee of the land involved in this law suit. This land is burdened with a right-of-way easement given by L. Gough to West Texas Gas Company and dated September 19, 1928. That easement read, in part, as follows:

"Said right-of-way being sufficient width to permit the grantee to lay, maintain, operate and remove parallel pipe lines for the transportation of oil or gas, as stated herein, and extending from the East boundary line of said tract to the West boundary line thereof, and extending across my said land in an approximately Westerly direction; for the purpose of constructing and placing on, in and under the surface of the ground a pipeline or lines over and through said land; and for the further and additional purpose of placing, constructing, erecting and maintaining on or over and across said lands private telegraph or telephone lines, giving to the said grantee the right and privilege to place its poles, guy wires and braces thereon and lines and equipment on such poles; and further granting to the said grantee, the right and privilege to enter upon said lands at all times for the purpose of making additions to, improvements on, and repairs to said pipeline or lines and said telegraph or telephone line or lines and to keep and maintain the same and to remove or replace the same; together with free ingress, egress, and regress to and for the said grantee, and his or its agents, employees, workmen and representatives, as by it, he or them shall be necessary or convenient, at all times and seasons for-

ever, in, along, upon and across said way, in common with the grantors, their tenants and assigns; provided that said pipe lines and said telegraph or telephone lines shall be constructed in an approved manner and with as little damage to said premises as may be practical considering the nature of the construction." This easement contained no express provision for the laying of additional pipe lines in the future.

Following the granting of this easement in 1928, the West Texas Gas Company laid an eight inch gas transmission line across the land. No other pipes were laid across the land until 1968, when Pioneer Natural Gas, as the assignee of West Texas Gas Company, laid a ten inch gas transmission line parallel to and approximately ten feet south of the 1928 eight inch line. Pioneer Natural Gas did not obtain a written right-of-way easement from Russell covering the right-of-way for the 1968 ten inch line.

Under its first point of error, Pioneer contends that the 1928 easement authorized it to lay an additional pipe line parallel to the 1928 eight inch line. Pioneer argues that the use in the easement of the terms "parallel pipe lines", "pipe line or lines", and "said pipe lines" gave it the right to lay more than one pipe line. Pioneer contends that its right to lay more than one pipe line was not exhausted by the laying of the eight inch line in 1928 and has not been abandoned since that time.

■ At issue here is whether the term "parallel pipe lines", as used in the 1928 easement, authorized the laying of a second pipe line in 1968. After an extensive review of similar cases in Texas and in other jurisdictions, the court believes that this case is governed by the California case of Winslow v. City of Vallejo, 148 Cal. 723, 84 P. 191, 5 L.R.A.,N.S., 851 (1906). The Winslow case is cited by both the appellant and appellee as supporting their respective positions. The Winslow case has also been approved of and cited in numer-

ous Texas cases. See, Houston Pipe Line Company v. Dwyer, 374 S.W.2d 662 (Tex. 1964); Phillips Petroleum Company v. Lovell, 392 S.W.2d 748 (Tex.Civ.App., writ ref'd n. r. e.); San Jacinto Sand Co. v. Southwestern Bell Tel. Co., 426 S.W.2d 338 (Tex.Civ.App., writ ref'd n. r. e.), cert. denied 393 U.S. 1027, 89 S.Ct. 622, 21 L. Ed.2d 570 (1969); Strauch v. Coastal States Crude Gathering Co., 424 S.W.2d 677 (Tex.Civ.App., writ dism'd); Coastal States Crude Gathering Co. v. Cummings, 415 S.W.2d 240 (Tex.Civ.App., writ ref'd n. r. e.); Bland Lake Fishing and Hunting Club v. Fisher, 311 S.W.2d 710 (Tex.Civ. App., no writ).

In Winslow the city of Vallejo owned and operated a water system. The water was impounded in a reservoir some 14 miles from the city of Vallejo and it was conveyed to the city through a ten inch iron main pipe line. This pipe was laid across Winslow's land under a grant of a right-of-way which was described as follows:

"Being the right of way on, in, through and over the land of the parties of the first part hereinafter described for any water pipes or mains which may be laid by the city of Vallejo, the party of the second part, and the right to maintain such water pipes and mains; provided that all water pipes and mains shall be laid so that not less than 1½ feet of ground shall cover such water pipes and mains, and that in no case shall the said water pipes or mains interfere with the proper cultivation of the lands of the parties of the first part, and also the use of so much land as is necessary in the laying down and maintaining of said water pipes and mains, and also the right to enter into and upon said lands for the purpose of laying down and maintaining said water pipes or mains, and also at all times in the future for the purpose of repairing and inspecting and maintaining said water pipes or mains, * * *."

This ten inch iron pipe line was laid in 1893. About nine years later the city of Vallejo attempted to lay an additional fourteen inch pipe line across Winslow's land. Like Pioneer in the case at bar, the city of Vallejo contended that the easement gave it the right to lay additional pipe lines as "the conveyance throughout use(d) the words 'pipes' and 'mains' in the plural number, and that, therefore, the parties could not have intended to limit the city to a single pipe." *Winslow, supra,* 84 P. at 192. The Supreme Court of California held that the city of Vallejo did *not* have a right to lay an additional pipe line.

The court noted that the conveyance was "general in its terms" and that it afforded "no basis for determining the number of pipes, their size, or their exact location." The court went on to state that:

"The rule is well settled that where a grant of an easement is general as to the extent of the burden to be imposed on the servient tenement, an exercise of the right, with the acquiescence and consent of both parties, in a particular course or manner, fixes the right and limits it to the particular course or manner in which it has been enjoyed."

"But, while the city might, at the outset, have laid more than one pipe, the most that can be said regarding this language is that the grant is indefinite as to the number of pipes. The city, having elected to lay one, is bound by this election. * * * It by no means follows, however, that the grantors, in conveying a right of way for water pipes over their land, intended to burden that land with an easement the extent of which could never be definitely ascertainable, and which might be enlarged again and again, as often as the growth of the city of Vallejo might make it necessary to extend the operations of the water plant." *Id.* 84 P. at 192–193.

In the case at bar, the grant of the easement was stated in general terms—it granted a "right-of-way being sufficient width to permit the grantee to lay, maintain, operate and remove parallel pipe lines for the transportation of oil or gas. * * *" When West Texas Gas Company laid the eight inch pipe in 1928, the grant became fixed and certain and cannot now be enlarged. Houston Pipe Line Company v. Dwyer, 374 S.W.2d 662 (Tex.1964); Winslow, *supra;* Belusko v. Phillips Petroleum Co., 7 Cir., 308 F.2d 832 (1962).

█ Appellant Pioneer, however, relies on the principle that "if the language of the grant clearly gives the grantee a right in excess of the one actually used, such right would still exist notwithstanding the exercise of a lesser privilege." Knox v. Pioneer Natural Gas Company, 321 S.W.2d 596, 600 (Tex.Civ.App., writ ref'd n. r. e.). While this is an accurate statement of the law, it is not applicable in this case. That statement has only been applied with regard to easements which give the grantee an express right to lay additional lines in the future.

In Strauch v. Coastal States Crude Gathering Co., 424 S.W.2d 677 (Tex.Civ. App., writ dism'd) the easement granted "unto said grantee the right at any time to lay, maintain, operate, repair, replace, or remove an additional pipe line or pipe lines alongside of said first pipe line * * *." The court there held that the instrument was not indefinite or general "because here the consideration to be paid for each additional pipe line is clearly and unmistakably spelled out, and the instrument in definite language expressly granted the right to lay etc. the additional pipe line alongside of the first line." *Id.* at 682.

In Williams v. Humble Pipe Line Company, 417 S.W.2d 453 (Tex.Civ.App., no writ), the easement expressly provided that the grantee "may at any time lay within the right of way described above an additional line or lines of pipe alongside of the line or lines herein mentioned, * * *" *Id.* at 454.

In Coastal States Crude Gathering Co. v. Cummings, 415 S.W.2d 240 (Tex.Civ.App., writ ref'd n. r. e.), the instrument stated that "(s)hould more than one pipeline be laid under this grant at any time Sixty-six and 66/100 Dollars shall be paid for each additional line so laid, besides the damages above provided for." *Id.* at 242.

In Phillips Petroleum Company v. Lovell, 392 S.W.2d 748, 749 (Tex.Civ.App., writ ref'd n. r. e.), the instrument provided that the grantee "shall pay to the Grantor, in addition to the consideration hereinabove stated, the sum of fifty cents per rod *for each separate line so laid.*" Although the instrument did not use the word "additional", the court there held that "the language employed and the definite consideration provided 'for each separate line so laid'" indicated that it was the intention of the parties to create a multiple line grant. *Id.* at 751.

In its brief Pioneer argues that this case is governed by the case of Knox v. Pioneer Natural Gas Company, *supra.* The *Knox* case was a suit by the landowner to prevent the gas company from removing a fifteen inch low pressure line and replacing it with a twelve inch high pressure line. The easement there, however, expressly provided that the grantee would have the right "to remove or replace" the pipe line. In the case at bar there was no express provision authorizing the grantee the right to lay additional lines in the future.

In its brief and reply brief, Pioneer indicates that, as the easement is for parallel pipe lines, it would have the right to lay at least two lines. Pioneer states that "(i)f West Texas Gas Company had laid two parallel pipe lines in 1928, and this controversy were over the laying of a third line, the Winslow case might afford the appellee some help * * *." The easement uses the phrase "parallel pipe lines" once, the phrase "pipe lines" once, the phrase "pipeline or lines" three times, and the the phrase "said gas line" twice. This ambivalence toward the number of pipe lines to

be laid indicates that it was not the express intention of the parties that the grantee lay "at least two parallel pipelines."

Pioneer in its brief also states that "the primary purpose in construing a deed, grant or instrument creating an easement is to arrive at the intention of the parties as determined from an examination of the whole instrument (as gathered from the four corners thereof)." But it is doubtful that L. Gough intended to convey the right to lay an infinite number of pipe lines across the land in question. In approaching a similar problem, the Supreme Court noted that:

"If defendant is correct in its contentions that the 1926 agreement authorized an increase in the size of the pipeline every time an increased demand for gas made such enlargement necessary, the extent of the easement could never become fixed or definitely ascertainable. Although there is no limitation on the size of the pipe to be laid, it does not necessarily follow that the parties, for a consideration of $32.00, intended to burden their land with an easement which might be enlarged over and over again, as often as an increase in demands for gas might make it necessary." Houston Pipe Line Company, *supra*, 374 S.W.2d at 665–666.

Under its second point of error Pioneer contends that appellee Walter Russell was estopped to deny Pioneer's right to lay an additional pipe line in 1968. The facts, as alleged by Pioneer in its brief, are:

"Before installation of the additional line in 1968 commenced, a representative of the appellant approached the appellee, and notified him that an additional pipe line was to be laid under the easement held by appellant, to which appellee responded with an inquiry as to payment of his damages * * *. Mr. Russell not only made no objection to the installation of the pipe line, but he visited the construction site during the installation period more than once (Russell's deposi-

tion, p. 85), and on page 86 of the deposition, he relates his efforts to speed the construction by calling the appellant's office and complaining about the length of the construction period. He did not protest the installation of the line until after its completion (Russell's deposition, pp. 88, 113), although he entertained doubts that appellant had the right to construct it * * *."

 Citing Corpus Juris Secundum, the Texas Supreme Court in Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952) has held that:

"In order to constitute an equitable estoppel or estoppel in pais there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice." *Id.* at 418, 252 S.W.2d at 932.

Thus there are five conditions which must exist in order to constitute an equitable estoppel. In the case at bar Walter Russell made no false representation nor concealed any material facts. Secondly, Pioneer had the means to learn that it did not have an easement across Russell's land. Thirdly, Russell did not make any statements or representations with the intention that Pioneer has not shown that it relied on or oneer has not shown that it relief on or acted on Russell's conduct to its prejudice.

Also determinative of the issue of estoppel is the case of Barfield v. Howard M. Smith Company of Amarillo, 426 S.W.2d 834 (Tex.1968). In that case the defendant-lessee had made an error in the manner by which it computed its rent. The method of computing the rent was set out in the lease. When the plaintiff-lessor brought suit to recover the rent which it had lost as a result of the erroneous computation, the defendant-lessee defended on the ground that the lessor was estopped from asserting a method of computing the rent different from that used by the lessee for the preceding six year period.

In *Barfield* the Supreme Court held that the doctrine of estoppel was inapplicable. "One of the requirements of estoppel is that the party claiming the estoppel was without knowledge, or the means of acquiring knowledge, of the facts which the party to be estopped is alleged to have represented by his acts, conduct or silence." *Id.* at 838. In the case at bar, Pioneer had the means to learn whether it had a right to lay the additional pipe line and cannot rely on the defense of estoppel.

 Pioneer's third point of error complains of the trial court's action in awarding Russell the title to and possession of the ten inch pipe line laid in 1968.

Art. 7401A, Vernon's Ann.Tex.Rev.Civ. Stat., provides that in an action of trespass to try title, the defendant may "include in his prayer for relief a prayer of judgment allowing the defendant, in the event the court or jury finds that he is not the rightful owner of the land, to remove the improvements * * *." Section 5 of Art. 7401A provides that:

"The remedy provided by this article is cumulative of all other remedies provided by this title and by other applicable statutes and rules of law and equity, and the defendant may plead for this remedy as an alternative to any other remedy to which he may be entitled."

As Pioneer did not plead in the alternative for the right to remove its improvements, this court must affirm the action of the trial court in awarding the title to and possession of the pipe line to Russell.

Judgment of the trial court is affirmed.