**BRAZOS ELECTRIC POWER COOPERATIVE, INC.,**
**Appellant,**

v.

**William CALLEJO, Trustee, et al., Appellee.**

No. 05–87–00267–CV.

Court of Appeals of Texas, Dallas.

Jan. 6, 1988.

Rehearing Denied Feb. 11, 1988.

Patrick D. Millar, Waco, for appellant.
Mike McKool, Dallas, for appellee.

Before HOWELL, HECHT and
BAKER, JJ.

BAKER, Justice.

Brazos Electric Power Cooperative Inc., appeals from a judgment non obstante veredicto rendered in favor of William F. Callejo, Trustee, in a condemnation case. Brazos asserts the trial court erred in rendering the judgment n.o.v. and in failing to render judgment in its favor because there was evidence to support the jury's verdict. Callejo asserts, in two cross-points, that the trial court erred in overruling his motion in limine and in failing to submit an instruction offered by Callejo. We agree with Brazos and therefore, reverse and render judgment as set forth below.

In December 1941, the then owners of the subject 130.71–acre tract granted a general easement to Brazos' predecessor. The 1941 easement was a general easement and did not describe any particular extent of land in metes and bounds. The easement granted at that time permitted entry upon the land to construct, operate and maintain on the described lands and in and upon all streets, roads or highways abutting said lands an electric transmission or distribution line or system and to place, construct, repair and maintain on said lands, anchor stubs and guy wires necessary or advisable for the construction, operation, repair and maintenance of said electric transmission or distribution line or system. Under the authority of this easement a 69,000 volt electric transmission line was constructed consisting of four two-pole wooden "H–Frame" structures located on

the property. Through a series of mesne transfers Callejo became the owner of the tract in question. In 1985, Brazos sought the right to reconstruct the existing transmission line, and raise it to a 138,000 volt electric transmission line and to install such apparatus as might be necessary and proper to maintain and operate a transmission line for the purpose of transmitting electric power at that voltage. Brazos filed its petition for condemnation of the permanent easement requested. Callejo timely objected to the commissioners' award. Callejo withdrew the award, rendering the only issue at trial that of damages. The case was submitted to a jury on four special issues.

The jury answered the Special Issues as follows:

### SPECIAL ISSUE NO. 1

What do you find from a preponderance of the evidence was the reasonable market value of the 134,165 square feet or 3.08 acres of land in the permanent easement across the William J. Callejo, Trustee, property, immediately before August 6, 1985?

ANSWER: $ 456,161.00

### SPECIAL ISSUE NO. 2

What do you find from a preponderance of the evidence was the reasonable market value of the 134,165 square feet or 3.08 acres of land in the permanent easement across the William J. Callejo, Trustee, property, immediately after August 6, 1985?

ANSWER: $ 364,928.88

### SPECIAL ISSUE NO. 3

What do you find from a preponderance of the evidence was the reasonable market value of the remainder of the William J. Callejo, Trustee property, being 5,559,563 square feet or 127.63 acres of land, crossed by said permanent easement, immediately before August 6, 1985?

ANSWER: $18,902,514.00

### SPECIAL ISSUE NO. 4

What do you find from a preponderance of the evidence was the reasonable market value of the remainder of the William J. Callejo, Trustee, property, being 5,559,563 square feet or 127.63 acres of land crossed by said permanent easement immediately after August 6, 1985?

ANSWER: $18,902,514.00

Brazos moved for judgment on the jury's verdict in the amount of $91,232.20, this sum being the difference between special issues numbered one and two. Callejo moved for judgment n.o.v. and asked the court to disregard the jury's answer to special issue number two and to make its own finding that the jury's answer to said issue was not supported by evidence. The trial court granted Callejo's motion for judgment n.o.v. and substituted a finding to special issue number two in the sum of $33,541.00. Based on this finding the trial court then rendered judgment in favor of Callejo in the amount of $422,622.00, the difference between the jury's answer to special issue number one and the $33,-541.00 amount the court found after disregarding the jury's answer to issue number two. On this appeal, neither party raises any question regarding the propriety of the jury's answers to special issues numbered three and four. Brazos has perfected its appeal on the sole point of error that the trial court erred in rendering judgment n.o.v. in favor of Callejo because there was evidence to support the jury's answer to issue number two.

■ In considering the propriety of a trial court's grant of a motion for judgment n.o.v., a "no evidence" point of error is presented. In deciding such a question, we must consider only the evidence and inferences which support the jury's finding, disregarding all contrary evidence. *Lucas v. Hartford Accident & Indemnity Co.*, 552 S.W.2d 796, 797 (Tex.1977). The evidence must be considered in the light most favorable to the party against whom the judgment n.o.v. was rendered, and every reasonable meaning deductible from the evidence is to be indulged in that party's favor. *Dowling v. NADW Marketing,*

*Inc.,* 631 S.W.2d 726, 728 (Tex.1982). If we find evidence, then the trial court erred in granting the judgment n.o.v. TEX.R.CIV.P. 301. In such case we must reinstate that portion of the jury verdict that was disregarded and enter an appropriate judgment. *James v. Vigilant Ins. Co.,* 674 S.W.2d 925, 926 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.).

At trial, Brazos called two expert witnesses on the easement values. Callejo personally testified and called two expert witnesses. Brazos' experts testified that the value of the easement prior to the date of taking was $67,082. Its experts testified that the after-taking value was $33,541. Hence, their damage testimony was $33,541.

Callejo and his witnesses testified that the value of the easement prior to taking ranged from a high of $737,907 to a low of $643,987. Callejo and his two witnesses all testified that the after-taking value of the easement was zero, that is a 100% decrease in value. Accordingly, the evidence of the before taking value ranged from a high of $737,907 to a low of $67,082. The after taking value ranged from a high of $33,541 to a low of zero.

■ The measure of damages in a suit for permanent damage to land is the difference in the market value of the land immediately before and immediately after the trespass. *Porras v. Craig,* 675 S.W.2d 503, 504 (Tex.1984). In a condemnation case, the jury may select from the testimony on the question of value and set the value at any amount between the highest and lowest expressed by the experts. *Tenngasco Gas Gathering Co. v. Fischer,* 653 S.W.2d 469, 473 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). A jury is at liberty to reach its conclusion by blending all of the evidence admitted before them, aided by their own experience and knowledge of the subject of inquiry; and they are not compelled to credit all the testimony of any witness or to reject it all. Moreover, our courts have held that opinion evidence is not conclusive. A jury may consider and accept or reject such opinions or it may find its own opinion from evidence and by utilizing its own experience in matters of common knowledge. *Leiber v. Texas Municipal Power Agency,* 667 S.W.2d 206, 207 (Tex.App.—Houston [14th Dist] 1983, writ ref'd n.r.e.); *see also Texas Electric Service Co. v. Wheeler,* 550 S.W.2d 297, 301 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.); and *McConnico v. Texas Power & Light Co.,* 335 S.W.2d 397, 399 (Tex. Civ.App.—Beaumont 1960, writ ref'd n.r. e.). The jury, when considering the value of the property immediately after condemnation, is restricted only by the lowest figure to which a witness testified. *Maddox v. Gulf, Colorado & Santa Fe Ry. Co.,* 293 S.W.2d 499, 507 (Tex.Civ.App.—Fort Worth 1956, writ ref'd n.r.e.). *See also Houston Belt & Terminal R.R. Co. v. Lynch,* 185 S.W. 362 (Tex.Civ.App.—Galveston 1916) *aff'd* 221 S.W. 959 (Tex.Com.App.1920, holding approved). It was within the exclusive province of the jury to judge the credibility of the witnesses and to determine the weight to be given their testimony. *Johnson v. Buck,* 540 S.W.2d 393 (Tex.Civ.App. —Corpus Christi 1976, writ ref'd n.r.e.).

■ As noted, there was expert testimony ranging from a pretaking value of $729,256 to an after-taking value of zero. It was the jury's province to return an answer within these limits. The figure found by the jury in answer to special issue number two being higher than the lowest figure testified to is supported by the evidence. The trial court erred in disregarding the jury's answer to that special issue and entering judgment n.o.v. Brazos' point of error is sustained.

■ Callejo brings two cross-points of error. The first complains that the trial court erroneously denied his motion in limine. Callejo moved to have Brazos prohibited from conveying to the jury that the 1941 general easement contained any more area of land than that portion wherein the facilities (the wooden poles, cross-arms, and wires) were originally installed. An erroneous ruling on a motion in limine is not reversible error, unless the questions or evidence were in fact asked or offered. If asked or offered there must be an objection at that time to preserve the complaint on

appeal. *Acord v. General Motors Corp.*, 669 S.W.2d 111, 116 (Tex.1984). At oral argument, Callejo conceded that none of the questions to which he addressed his motion in limine were asked and no objections were therefore made. Under these circumstances, nothing is presented for review. Callejo's first cross-point is overruled.

In his second cross-point, Callejo asserts that the trial court erred in denying his requested instruction that the 1941 general easement fixed the extent of said easement to the four wooden H–Frame poles with cross-arms and wires originally installed. Callejo contends that the rule concerning such general easements is that the exercise of the easement right in a particular manner fixes the right and limits it to the particular course or manner in which it has been conducted. Callejo's position was that the easement in favor of Brazos could be no greater than the existing line in its current form and that said easement was not a sixty-foot wide easement. Callejo contends that Brazos was attempting to lead the jury to believe that the 1941 general easement was a sixty-foot wide easement, and that the second easement was simply a reconstruction of the original transmission line with wooden poles into a new transmission line with steel poles. In support of his position on the fixed limit of the easement, Callejo relies on *Houston Pipeline Co. v. Dwyer*, 374 S.W.2d 662 (Tex.1964), and *Pioneer Natural Gas Co. v. Russell*, 453 S.W.2d 882 (Tex.Civ.App.—Amarillo 1970, writ ref'd n.r.e.). Both the *Dwyer* and *Russell* cases involved a pipeline as opposed to an electric transmission line. In *Dwyer*, the pipeline company replaced an eighteen-inch pipeline installed under its original easement with a thirty-inch pipeline. The landowner claimed that the pipeline company's original easement did not authorize such an action. The Supreme Court agreed, holding that the extent of the easement became fixed when the original eighteen-inch pipeline was laid twenty-three years prior to the laying of the thirty-inch pipeline. Therefore, the pipeline company had no authority under the original easement to install a substantially larger pipeline.

In *Russell*, the pipeline company laid an eight-inch pipeline under its easement. Forty years later the company laid another ten-inch pipeline parallel to and approximately ten-feet south of the original eight-inch pipe. The pipeline company contended that the original easement authorized this action. The *Russell* court disagreed and relied on *Dwyer* in holding that the installation of the original eight-inch pipeline fixed the extent of the easement. Therefore, the original easement did not authorize the installation of a second pipeline in a different location.

■ Brazos does not dispute that the scope of an easement granted in general terms is fixed by its use as held in *Dwyer* and *Russell*. However, Brazos points out that equally as important is the principle that every easement carries with it the right to do whatever is reasonably necessary for the full enjoyment of the easement itself and relies on *Johnson v. Southwestern Public Service Co.*, 688 S.W.2d 653 (Tex.App.—Amarillo 1985, no writ). Brazos takes the position that under the general easement it was and is entitled to not only the use of the easement to the extent of the actual poles and wires installed, but also the right to maintain the transmission line and use such area as necessary to operate and maintain the transmission. Brazos contends that Callejo's requested instruction was not substantially correct in that it was incomplete. Brazos asserts that it spoke only to the actual physical facilities installed on the property and not to the area required for full use and enjoyment of the easement. Accordingly, Brazos argues that Callejo's instruction would be a misstatement of the law and therefore not proper.

In an easement condemnation case the purposes, rights, and limitations of the condemnor in the use of the easement are of great variety and must be clearly delineated. It is the trial court's duty, by way of instruction in the court's charge, to explain the rights of the parties under the particular easement being sought. *Texas Power*

& *Light Co. v. Cole,* 158 Tex. 495, 313 S.W.2d 524 (1958). The extent of the easement sought and the rights of the parties thereunder is one of law. *White v. Natural Gas Pipeline Co. of America,* 444 S.W.2d 298, 303 (Tex.1969). An explanatory instruction submitted with a special issue is required to be one that "shall be proper to enable the jury to render a verdict" TEX.R.CIV.P. 277. To be proper an instruction must be correct [*Sanders v. Davila,* 593 S.W.2d 127, 129 (Tex.App.—Amarillo 1979, writ ref'd n.r.e.)], since an instruction that misstates the law cannot be expected to produce a correct verdict. Pope & Lowerre, *The State of the Special Verdict–1979,* 11 St. Mary's L.J. 1, 38 (1979).

The trial court in this case gave very detailed instructions to the jury defining the easement sought by Brazos. These instructions defined the permanent easement to mean the right by Brazos to use the land for the purpose of construction, operation, maintenance and servicing of the electrical transmission line together with the structures, apparatus and appurtenances thereto for the purpose of supplying the public with electric current. Specifically included in this instruction was the right to construct the new transmission line having a capacity of 138,000 volts and to install such apparatus as may be necessary and proper to maintain and operate the transmission line of this voltage for the purpose of transmitting the electrical power. These instructions contained specific definitions of the rights of Brazos and also the rights reserved to Callejo. The instruction to the jury did not contain the requested instruction by Callejo nor did it contain any instruction to the jury of any width expressed in feet. We conclude that under the facts in this case, the instruction requested by Callejo did not go far enough in that it failed to include language specifying the *use* by Brazos. We are of the opinion that the instruction given by the trial court to the jury was correct in law and that the trial court did not commit error in refusing to submit Callejo's requested instruction. *See City of Dallas v. Anderson,* 570 S.W. 2d 62, 64 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.); *Texas Power & Light Co. v. Lovinggood,* 389 S.W.2d 712, 715 (Tex.Civ. App.—Dallas 1965, writ ref'd n.r.e.). Callejo's second cross-point is overruled.

Having found the trial court improperly disregarded the jury's finding to Special Issue No. two, we reinstate the jury's answer to that issue, and reverse the trial court's judgment and render judgment that the amount recoverable by appellees is $91,232.20, that sum representing the difference between the jury's answers to Special Issues Nos. one and two.

The trial court's judgment is therefore reversed and rendered reinstating the jury verdict in favor of William Callejo, Trustee, et al. in the sum of $91,232.20.