**KENNEDY CON., INC., Appellant**

**v.**

**Glenn W. FORMAN, Jr., Appellee**

**NO. 14-14-00776-CV**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed September 8, 2016

Rehearing En Banc Overruled November 1, 2016

 

Richard H. Edelman, Charles E. Fitch, Houston, TX, for Appellant.

Wade B. Williams, Galveston, TX, Joe Burt Gulley III, Houston, TX, Vincent L. Marable, III, Wharton, TX, for Appellee.

Panel consists of Chief Justice Frost and Justices Christopher and Donovan.

## OPINION

Kem Thompson Frost, Chief Justice

The defendant in a trespass-to-try-title action appeals a judgment in favor of the plaintiff. Though the evidence is legally sufficient to support the jury's finding of

prior possession of the subject property, which had not been abandoned, the evidence is legally insufficient to support an award of lost-profits damages. The trial court also erred in awarding the plaintiff title to the improvements on the subject property and in including in the judgment certain language regarding the removal of improvements. We modify the judgment to delete the lost-profits damages, the improvements award, the improvements language, and a reference to "strips and gores" in the property description. We conclude that as modified, the judgment contains a sufficient description of the subject property, and we affirm the judgment as modified.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellee/plaintiff Glenn W. Forman, Jr. filed this trespass-to-try-title action against appellant/defendant Kennedy Con., Inc.[1] In his live pleading, Forman sought judgment that he is the owner in fee simple of the following property in the City of Galveston in Texas: all strips, gores, and property lying in or under the easterly one-half of abandoned 65th Street lying northerly of Channelview Drive (hereinafter the "Property"). In his live pleading, Forman also alleged that he had legal title to the following property, though he did not seek a determination of title as to this property: (1) all of that part of Lot 502 of Section One of the Trimble and Lindsey Survey of Galveston Island (hereinafter "Lot 502") that lies north of Port Industrial Boulevard, now known as Harborside Drive, and south of Galveston Bay, and south of Parcel No. 1 described in the deed recorded under Galveston County Clerk's file number 9038382 (hereinafter "Tract One"), and (2) all that part of Lot 502 that

lies northerly of the property described in the foregoing item (1) (hereinafter "Tract Two"). Forman and Kennedy both agree that, by means of City of Galveston Ordinance No. 68–70, adopted on December 26, 1968, to take effect on January 25, 1969, the City of Galveston abandoned the part of the "street right-of-way" known as 65th Street that was north of Channelview Drive and south of Galveston Bay.

When the City of Galveston abandoned the right of way, Richard Anderson held a deed purporting to grant him title to the property to the east of the land previously burdened by the abandoned 65th Street right of way. In Anderson's deed, the grantor did not expressly state that he was conveying any interest in the real property burdened by the 65th Street right of way. After the City of Galveston abandoned the part of the 65th Street right of way that was north of Channelview Drive and south of Galveston Bay, Anderson apparently concluded that he owned all of the real property that had been burdened by the abandoned right of way. In 1973, Anderson and his wife signed a deed in which they purported to convey the property that had previously been conveyed to Anderson as well as "all that part of 65th Street abutting said lot which was abandoned by the City of Galveston by [City of Galveston Ordinance No. 68–70]." The Galveston County Real Property records contain a chain of deeds from the grantee of the 1973 deed to the June 28, 2005 deed to Kennedy, and each of these deeds has similar language. The deed to Kennedy purports to convey "that portion of 65th Street abutting Lot 14 abandoned by [City of Galveston Ordinance No. 68–70]."

The deed under which Forman claims to hold title to Tract One and Tract Two also

---

1. Forman sued two other defendants whom the trial court dismissed from the case before the trial court rendered judgment.

contains language purporting to convey to Forman "the easterly one-half (½) of abandoned 65th Street lying northerly of Channelview Drive."

To aid in understanding the general location of these tracts, we provide the following diagram:[2]

In his live petition, Forman sought judgment for title to and possession of the Property, damages for alleged actual damages caused by Kennedy's wrongful possession of the Property, and attorney's fees. Kennedy disputed Forman's claim of title to the Property and filed an answer in which Kennedy pleaded "not guilty." Kennedy also filed various counterclaims against Forman. The trial court granted Forman's summary-judgment motion. On appeal, this court reversed and remanded. *See Kennedy Con., Inc. v. Forman*, 316 S.W.3d 129 (Tex.App.—Houston [14th Dist.] 2010, no pet.).

On remand, the case proceeded to trial before a jury, which issued a verdict in favor of Forman on his theories of prior possession not abandoned and adverse possession and against Kennedy on its claims of adverse possession. The jury also found that when the City of Galveston abandoned the right of way over the Property, all of the land abutting the east side of the Property was not submerged by Galveston Bay. In other words, the jury found that on January 25, 1969, Tract One, at least in part, abutted the Property to the east. The jury also found that $237,281.60 would fairly and reasonably compensate Forman for his damages resulting from Kennedy's use and occupation of the Property based on Forman's past lost profits. The trial court, as a matter of

2. This diagram is a rough approximation for illustration purposes and is not drawn to scale. The dotted line in the diagram is a rough representation of the Galveston Bay shoreline for illustration purposes; it is not intended to be an accurate depiction of the shoreline's contour or location. This diagram is not intended to be an accurate depiction of the part of the Property submerged by Galveston Bay. A 1984 survey reflects that, in 1984, there was land on abandoned 65th Street that was north of the northline of the Kennedy Property and not submerged by Galveston Bay.

law in its conclusions of law, found that Forman had title to the Property based on a regular chain of conveyances from the sovereign and based on superior title out of a common source.

The trial court rendered a final judgment on the jury's verdict, in which the trial court (1) awarded Forman title to and possession of the Property, including all improvements thereon, (2) determined that Forman is the legal and rightful owner of the Property, (3) ordered that Forman is entitled to full and complete possession of the Property to the complete exclusion of Kennedy, whom the court concluded has no legal or equitable interest in the Property, (4) awarded Forman actual damages of $237,281.60 against Kennedy based on the jury's damage finding, plus prejudgment interest thereon, (5) awarded Forman reasonable and necessary attorney's fees under section 16.034 of the Texas Civil Practice and Remedies Code, (6) rendered a take-nothing judgment against Kennedy on its counterclaims, and (7) notwithstanding the award of improvements on the Property to Forman, ordered Kennedy to remove from the Property all improvements placed thereon by Kennedy, its agents, employees, and representatives, in a specified manner and according to a specified procedure. The trial court denied Kennedy's post-judgment motions, and Kennedy perfected this appeal.

## II. STANDARD OF REVIEW

■ On appeal, Kennedy challenges the legal sufficiency of the evidence to support various findings. When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex.2005). We must credit favorable evidence if a reasonable

factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the only judge of witness credibility and the weight to give to testimony. *See id.* at 819.

## III. ISSUES AND ANALYSIS

### A. Is the evidence legally sufficient to support the jury's finding as to prior possession not abandoned?

■ In its first issue, Kennedy asserts that the evidence is legally insufficient to support the jury's finding in response to question four that, "[i]n July of 2006," Forman was "in actual possession of the [Property] that he had not abandoned." That was the extent of the jury's finding in response to question 4. The trial court did not submit any instructions with question 4, nor did the court define any of the words in that question. At the charge conference, no party objected to the form of question 4. Therefore, the sufficiency of the evidence supporting the jury's finding in response to this question is measured using the charge given. *See Osterberg v. Peca,* 12 S.W.3d 31, 55 (Tex.2000) (holding that appellate court could not review the sufficiency of the evidence based on a particular legal standard because that standard was not submitted to the jury and no party objected to the charge on this ground or requested that the jury be charged using this standard); *Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc.,* 201 S.W.3d 272, 283–86 (Tex.App.—Houston [14th Dist.] 2006, no. pet.) (reviewing sufficiency of evidence based on unobjected-to jury instruction and rejecting various arguments based on different legal standards).

On appeal, Kennedy asserts that the evidence is legally insufficient to show exclusive, peaceable, and continuous possession of the Property by Forman. The charge submitted to the jury did not require that Forman's actual possession of the Property be exclusive, peaceable, or continuous; therefore, we do not measure the legal sufficiency of the evidence using any of these three criteria. *See Osterberg*, 12 S.W.3d at 55; *Hirschfeld Steel Co.*, 201 S.W.3d at 283–86.

It is undisputed that Kennedy was in possession of the Property from July 4, 2006, forward, and that on July 4, 2006, Forman told Kennedy that Forman owned the Property. Two days later, Forman's attorney sent a letter to Kennedy asserting that Forman owned the Property, demanding that Kennedy not conduct activities on the Property, and threatening a lawsuit if Kennedy did so. When Kennedy did not comply with Forman's demand letter, Forman filed this lawsuit.

At trial, Forman testified as follows:

- Forman purchased Tract One and the Property in 2000. At the time of this purchase, there was no fence of gate preventing access to the Property, nor was there any activity on the Property. There were no goods, equipment, or structures on the Property at that time.
- Forman agrees with the description of the Property as being mostly or primarily "riprap"—a term used to describe pieces of concrete and rock of various sizes used for shoreline protection.
- In 2001, a prior owner of the Kennedy property to the west of the Property put a gangway onto a set of pilings in Galveston Bay east of the Property. Forman told the foreman of the prior owner that Forman owned the Property.

- Forman's attorney sent a letter to the prior owner asserting that Foreman owned the Property and asking the former owner to cease activity on the Property. After this letter was sent, the prior owner removed their property from the Property.
- In 2005, Kennedy, bought property to the west of the abandoned right of way.
- Forman testified that he paid property taxes for the Property.
- Forman and his employees accessed the Property to clean it up by removing trash. The prior owner of Kennedy's property did not object to Foreman cleaning up the Property.
- At some point in the past Forman put up no trespassing signs to notify people to stay off private property.
- Forman put riprap on the Property. Forman and another man used bulldozers to lay riprap right under the shoreline of the Property to "beef it up."
- When Forman put riprap on the Property, he talked to the foreman of the prior owner of Kennedy's property and let him know that Forman would be laying riprap. The foreman did not object and had no problem with Forman laying riprap on the Property.
- George Sims, a friend of Forman, began to moor Sims's barge on Tract Two for about a year with Forman's permission. During this time, Sims accessed his barge using a gangway placed on the Property.
- Forman knew Kennedy's principal, Christopher Kennedy, before Kennedy bought the property to the west of the abandoned right of way. When Kennedy first bought this property, it started moving items onto its property but kept off of the Property. For-

man's office was located on Tract One, and Foreman could see the Property from a window in Forman's office.

- On July 4, 2006, Forman looked out his office window and saw workers from Kennedy's property crossing onto the Property while doing "dirt work."
- Forman walked over and asked Christopher Kennedy what was going on, told him he was crossing onto the Property, and showed him survey stakes in the ground. According to Forman, Christopher Kennedy indicated that he was going to continue his activities on the Property.
- Two days later, Forman's lawyer sent a letter to Christopher Kennedy.
- Kennedy did not respond, and Forman then filed this lawsuit.
- After Forman filed this lawsuit, Kennedy made various improvements on the Property. Forman sent another letter informing Christopher Kennedy of the lawsuit and that he should not "go any further," but the letter did not have any effect on Kennedy's activities.
- The Property cannot be accessed at present because Kennedy has embedded a metal fence into the riprap. Kennedy has poured concrete onto the Property.

The trial evidence includes tax receipts from the Galveston County Tax Assessor-Collector showing that Forman paid property taxes on the Property for at least tax years 2000 through 2013. The trial evidence also contains the letter dated July 6, 2006, from Forman's lawyer to Christopher Kennedy asserting that Forman owned the Property, demanding that Kennedy not conduct activities on the Proper-ty, and threatening a lawsuit if Kennedy did so. Forman did not put a gate or a fence on the Property. The Property is a small strip of land bordering Galveston Bay that from 2000 through July 4, 2006, was mostly or primarily riprap.[3]

On appeal, Kennedy asserts that there is no evidence that Forman was physically on the Property in July 2006, or that Forman conducted any activity on the Property in July 2006. Kennedy suggests that, for there to be legally sufficient evidence to support the jury's finding in response to question 4, there must be trial evidence of Forman's activities on the Property in July 2006 constituting actual possession. It is undisputed that Kennedy was in possession of the Property from July 4, 2006 through the time of trial. We construe jury question 4 as asking the jury whether Forman was in actual possession of the Property that he had not abandoned. We conclude that this question does not require proof of actions by Forman in July 2006, to prove Forman's actual possession of the Property in July 2006. Forman's actual possession of the Property in this month may be shown by Forman's actions before July 2006.

After considering all of the trial evidence under the applicable standard of review, we conclude that the evidence is legally sufficient to support the jury's finding that in July of 2006, Forman was in actual possession of the Property that he had not abandoned. *See Oswald v. Staton*, 421 S.W.2d 174, 176–77 (Tex.Civ.App.—Waco 1967, writ ref'd n.r.e.) (holding evidence was sufficient to show prior actual possession by plaintiff in trespass-to-try-title action of undeveloped land covered by brush based payment of taxes on the land, having the land surveyed, building a tower on the land, hunting on the land, cutting

---

3. Part of the Property actually is submerged by Galveston Bay.

timber off the land from time to time, and leasing the land for oil and gas).

**B. Does Kennedy's argument based on record title have merit?**

■ Under its first issue, Kennedy also asserts that proof of prior possession not abandoned cannot overcome record title but merely creates a presumption of ownership based on possession, and that this presumption is rebutted by proof of "record title" in the trespass-to-try-title defendant. Kennedy claims that its "record title" to the Property was established by nine trial exhibits: (1) Kennedy's deed, (2) the chain of deeds going back to Richard Anderson's 1973 deed,[4] (3) City of Galveston Ordinance No. 68–70, and (4) the 1837 Trimble and Lindsay Survey of Galveston Island, which allegedly dedicated the 65th Street right of way to public use.[5] According to Kennedy, because there are no gaps or defects in these instruments, Kennedy's prima facie showing of record title to the Property could be overcome only by a showing of superior title or adverse possession. Kennedy argues that, because the evidence is legally insufficient to support the jury's answer to question 4[6] and because Forman's claim of prior possession not abandoned is refuted by the alleged evidence of Kennedy's record title to the Property, the judgment should be reversed and a take-nothing judgment rendered against Forman's prior-possession-not-abandoned theory.

■ A finding that the trespass-to-try-title plaintiff was in prior possession of the disputed property which had not been abandoned creates a rebuttable presumption that the plaintiff holds title to the disputed property. *See Reiter v. Coastal States Gas Producing Co.*, 382 S.W.2d 243, 251 (Tex.1964). But, binding precedent is at odds with Kennedy's assertion that to rebut this presumption, the defendant need only show "record title" to the property. *See id.* Instead, the Supreme Court of Texas has held that to rebut the presumption of title in this situation, a defendant must prove that the defendant has "a better title" to the Property than the plaintiff. *See id.*; *Teon Management, LLC v. Turquoise Bay Corp.*, 357 S.W.3d 719, 728 (Tex.App.—Eastland 2011, pet. denied). Because Kennedy did not obtain a jury finding that it has better title to the Property than Forman does, Kennedy would have to show that the trial evidence conclusively establishes that Kennedy has better title to the Property. *See* Tex. R. Civ. P. 279 (stating that "[u]pon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived"); *XCO Production Co. v. Jamison*, 194 S.W.3d 622, 632 (Tex.App.—Houston [14th Dist.] 2006, pet. denied) (stating that the failure to request a jury instruction on an affirmative defense results in waiver of that ground by the party relying on it unless it was conclusively established).

■ "Record title" does not mean good and perfect title; rather "record title" requires only that some recorded instrument indicates that a person has title. *See Milner v. Milner*, 361 S.W.3d 615, 621 (Tex. 2012) (stating that record title typically

---

4. *See ante* pp. 2–3.

5. Though Kennedy asserts that these nine trial exhibits establish its record title to the Property, Kennedy does not assert that the trial evidence establishes its record title to the Property as a matter of law. In addition to the trial testimony, the volume of the reporter's record containing the trial exhibits is 849 pages. The trial evidence contains more than 120 instruments.

6. We addressed this argument in the prior section of this opinion.

refs to legal evidence of a person's ownership rights in property); *Longoria v. Lasater*, 292 S.W.3d 156, 165 (Tex.App.—San Antonio 2009, pet. denied) (stating that " 'record title' means title as it appears in the public records after the deed is properly recorded"); Black's Law Dictionary 1523 (8th ed. 2004) (defining "record title" as "[a] title as it appears in the public records after the deed is properly recorded"). A finding that the trespass-to-try-title plaintiff was in prior possession of the disputed property which had not been abandoned creates a rebuttable presumption that the plaintiff holds title to the disputed property. *See Reiter*, 382 S.W.2d at 251. If the plaintiff has not proved title by limitations and has no recorded instrument purporting to give the plaintiff title, proof of a recorded instrument purporting to give the defendant title would be "a better title" that would rebut the presumption of title raised by the plaintiff's prior possession. *See id.* But, Forman has a recorded deed that purports to convey the Property to Forman, and Kennedy has a recorded deed that purports to convey the Property to Kennedy. In this context, evidence showing that Kennedy has record title does not alone prove that Kennedy has a better title.

The issue of whether Kennedy has a better title to the Property than Forman is a complicated one that implicates a number of factual and legal issues. In the part

of Kennedy's brief addressing prior possession not abandoned, Kennedy does not address most of these issues. Instead, Kennedy asserts that it need only show record title to the Property, that certain of its exhibits established record title, and that Kennedy's prima facie showing of record title to the Property could be overcome only by a showing of superior title or adverse possession. Kennedy appears to be arguing that if a plaintiff proves its prior, unabandoned possession of the disputed property and the defendant makes a prima facie showing of record title to the disputed property, the burden shifts back to the plaintiff to prove that the plaintiff has a title superior to the defendant's title. Kennedy cites no cases that support this proposition.[7] The *Reiter* court held that to rebut the presumption of title in the plaintiff in this situation, a defendant must prove that the defendant has "a better title" to the Property than the plaintiff. *See Reiter*, 382 S.W.2d at 251; *Teon Management, LLC*, 357 S.W.3d at 728. The *Reiter* court did not hold that the defendant may rebut this presumption by making a prima facie case of record title. *See Reiter*, 382 S.W.2d at 251; *Teon Management, LLC*, 357 S.W.3d at 728.

Kennedy has not argued in the trial court or on appeal that the trial evidence conclusively proves that Kennedy has "a better title" to the Property than Forman.[8]

---

**7.** Kennedy cites the *Reiter* case, which does not support this proposition. *See Reiter*, 382 S.W.2d at 249–51. Kennedy also cites an opinion from the Third Court of Appeals, which does not support this proposition. *See Teri Road Partners, Ltd. v. 4800 Freidrich Lane L.L.C.*, No. 03–13–00221–CV, 2014 WL 2568488, at *1, 3, 6 (Tex.App.—Austin Jun. 4, 2014, pet. denied) (concluding that any presumption of title raised by *defendant's* proof of "prior possession" of the disputed property was rebutted by proof that a deed conveyed title to the disputed property to the trespass-to-try-title plaintiff, in a case in which the

defendant never asserted at trial that it owned the disputed property or argued that the plaintiff did not own the disputed property) (mem. op.).

**8.** In its third issue Kennedy challenges the legal sufficiency of the evidence to show that Forman has a regular chain of conveyances from the sovereign. In support of this issue, Kennedy presents arguments relating to Forman's title. But, Kennedy does not compare its alleged title to the Property with Forman's alleged title to the Property, nor does Kennedy argue that the trial evidence conclusively

Therefore, we need not address this argument, and we conclude that Kennedy's assertions regarding its record title to the Property do not show that the trial court erred in basing its judgment on Forman's prior-possession-not-abandoned theory.[9]

Having addressed all of Kennedy's arguments under its first issue, we overrule that issue.[10]

## C. Is the trial evidence legally sufficient to support the award of any lost-profits damages?

■ In its fifth issue, Kennedy asserts that the evidence is legally insufficient to support the award of any lost-profits damages. In response to question 9, the jury found that $237,281.60 would fairly and reasonably compensate Forman for his damages that resulted from Kennedy's use and occupation of the Property. The only element of damages that the trial court instructed the jury to consider was "Forman's lost profits sustained in the past." In its judgment, the trial court awarded this amount as Forman's actual damages based on this jury finding.

■ Recovery for lost profits does not require that the loss be susceptible of exact calculation. *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 84 (Tex. 1992). The injured parties, however, must do more than show that they suffered some lost profits. *Id.* They must demonstrate the amount of the loss with reasonable certainty, by competent evidence. *Id.* What constitutes reasonably certain evidence of lost profits is a fact-intensive determination. *Id.* At a minimum, opinions or estimates of lost profits must be based

on objective facts, figures, or data from which the amount of lost profits may be ascertained. *Id.* The bare assertion that contracts were lost does not demonstrate a reasonably certain, objective determination of lost profits. *Id.* at 85. To support the recovery of lost profits, the record must contain evidence sustaining one complete calculation of lost profits. *Id.* Lost profits are damages for the loss of net income to a business and, broadly speaking, reflect income from lost business activity, less expenses that would have been attributable to that activity. *Miga v. Jensen,* 96 S.W.3d 207, 213 (Tex.2002). The calculation of lost-profits damages must be based on net profits, not gross revenue or gross profits. *See Heine,* 835 S.W.2d at 83 n. 1; *Kellmann v. Workstation Integrations, Inc.,* 332 S.W.3d 679, 684 (Tex.App.—Houston [14th Dist.] 2010, no pet.). When a review establishes that the profits are not reasonably certain, the injured party has failed to prove lost profits as a matter of law. *See Heine,* 835 S.W.2d at 83–86.

Forman did not submit any expert testimony to support his alleged lost profits in the past; instead, Forman provided the following testimony:

- Forman sought lost-profits damages based on the storage of barges on Tract Two. If barges are moored on Tract Two in Galveston Bay, the barges can be accessed from a gangplank with one end on the Property.

- In Forman's opinion, it would be reasonable to store ten barges on Tract Two, and he possibly could store more than ten on Tract Two.

---

proves that Kennedy has "a better title" to the Property than Forman.

9. Even if Kennedy had made this argument, the trial evidence does not conclusively prove that Kennedy has "a better title" to the Property than Forman.

10. Having overruled Kennedy's first issue, we need not and do not address Kennedy's second, third, and fourth issues challenging the legal sufficiency of the evidence to support Forman's other trespass-to-try-title theories.

- In 2005, Forman was generally familiar with the need and market for storing empty barges. He believes that a fair and reasonable charge to store a barge on Tract Two is $110 per day.
- There is a market for storing empty barges.
- The storage of barges on Tract Two was not going to require Forman to pay any expenses.
- During opening statement, Forman heard Kennedy's counsel say that Forman was seeking $3.4 million in damages. Presuming 96 months between the filing of this lawsuit and the time of trial, Forman thinks you could calculate the amount of damages mentioned by Kennedy's counsel during opening statement.
- Based on Forman's general familiarity with the market, there was room for ten barges in Tract Two, and Forman could have leased mooring for ten barges every day of the year for each the years since Forman filed this suit.

In his testimony, Forman did not state the amount of lost profits that he claims he sustained as a result of Kennedy's use and occupation of the Property. Forman indicated that he agreed with the amount of damages mentioned by Kennedy's counsel during oral argument—$3.4 million—but Forman did not state that he had sustained $3.4 million in lost profits. Forman stated that one could calculate this amount of damages based on ten barges per day at $110 per day continuously for 96 months, but this calculation yields a total of less than $3.2 million.[11] Forman did not provide an opinion or estimate as to the specific amount of lost profits that he allegedly sustained. Nor did Forman testify regarding any single calculation of lost-profits

damages. There is no indication in Forman's testimony that he was providing an opinion or estimate based on objective facts, figures, or data from which the amount of lost profits may be ascertained. There is no trial evidence that Forman suffered any reasonably certain business losses resulting from Kennedy's use and occupation of the Property.

Under the applicable standard of review, we conclude the trial evidence is legally insufficient to support an award of lost-profits damages. *See Heine,* 835 S.W.2d at 83–86; *Kellmann,* 332 S.W.3d at 684–87; *Parkway Dental Assocs., P.A. v. Ho & Huang Properties, L.P.,* 391 S.W.3d 596, 608–09 (Tex.App.—Houston [14th Dist.] 2012, no pet.). Because the evidence is legally insufficient to support the award of any lost-profits damages, we modify the judgment to delete the award of these damages. *See Heine,* 835 S.W.2d at 83–86; *Kellmann,* 332 S.W.3d at 684–87. Accordingly, we sustain Kennedy's fifth issue.

**D. Did the trial court err in including erroneous language regarding improvements in its judgment?**

In its live pleading, Kennedy made a plea for removal of improvements under Texas Property Code section 22.041, in the event Forman succeeded in his trespass-to-try-title action. *See* Tex. Prop. Ann. § 22.041 (West, Westlaw through 2015 R.S.). Under this section, a defendant in a trespass-to-try-title action who is not the rightful owner of the property in controversy may remove improvements made to the property if: (1) the defendant, and those under whom the defendant claims, possessed the property, and made permanent and valuable improvements to it, without intent to defraud; and (2) the im-

---

**11.** During closing argument, Forman's counsel suggested that the jury find $3,168,000 in lost profits, presuming thirty days per month, for 96 months, with ten barges at $110 per day.

provements can be removed without substantial and permanent damage to the property. *Id.* The trial court granted Kennedy this relief it its judgment, which contains language implementing section 22.041, as well as the related sections 22.042, 22.043, and 22.044. *See* Tex. Prop. Ann. §§ 22.041–22.044 (West, Westlaw through 2015 R.S.). Forman has not appealed or challenged the granting of this relief.

Under its eighth issue, Kennedy challenges the trial court's denial of its request that the trial court delete from the judgment language giving Forman title to the improvements on the subject property, even though the judgment allows Kennedy to remove the improvements, as provided in Property Code section 22.041. The only authority Forman asserts in support of this language is *Pioneer Natural Gas Co. v. Russell. See* 453 S.W.2d 882, 886–87 (Tex.Civ.App.—Amarillo 1970, writ ref'd n.r.e.). That case is not on point because the trespass-to-try-title defendant waived the protections of the predecessor statute to section 22.041 by failing to request relief under this statute. *See id.* Forman also asserts that Kennedy may disobey the trial court's judgment by refusing to remove the improvements, and therefore, Forman needs to own the improvements so that Forman will have a right to remove the improvements. But, the judgment gives Forman the right to have the improvements removed, and Forman has recourse to remedies available to enforce the judgment should Kennedy refuse to comply with the judgment. We conclude that the trial court erred by granting relief under

Property Code section 22.041 while at the same time awarding Forman title to the improvements; therefore we modify the judgment to remove all language giving Forman title to the improvements. *See* Tex. Prop. Ann. §§ 22.041–22.044.

Under its eighth issue, Kennedy also challenges the trial court's denial of its request the trial court delete from the judgment language requiring Kennedy to remove the improvements from the subject property "in a manner which allows [Forman] to fully utilize and access his Property from Channelview Drive or from the submerged portion of Lot 502, Section 1, Trimble and Lindsey Survey (owned by [Forman])." Kennedy argues that this language is ambiguous and goes beyond the requirements of section 22.041 (which are imposed in the judgment) that Kennedy restore the subject property to its condition before the improvements were made. *See* Tex. Prop. Ann. § 22.041(c). We agree that this language goes beyond the statute and might put Forman in a better position than he was before the events giving rise to this lawsuit. *See* Tex. Prop. Ann. §§ 22.041–22.044. Therefore, we modify the judgment to delete this language.[12] *See id.* We sustain the eighth issue.

**E. Is the description of the property in the judgment deficient?**

■ In its sixth issue, Kennedy challenges the sufficiency of the trial court's description in the judgment of the subject property. Kennedy complains that (1) the property description in the judgment is conditioned on the tract being a strip or a gore, which it is not; and (2) the trial

---

**12.** Kennedy also objects to the part of this language stating that Forman owns the submerged portion of Lot 502, Section 1, asserting that it was improper for the trial court to make a comment regarding ownership of this property. This is the only such comment in the judgment regarding ownership of the sub-

merged portion of Lot 502, and we already are deleting this language for the reason described in this section. In adjudicating this appeal, we need not and do not take any position on the issue of who owns Lot 502, Section 1.

testimony of Kennedy's expert, Kent McMillan, showed that there is a six-to-seven-foot discrepancy as to the location of the eastern boundary of 65th Street between a Luttrell survey made around 1900 and later surveys.

■■■■■■ The test for determining whether a trespass-to-try-title judgment contains a sufficient description of the property subject to the judgment is whether the tract can be identified with reasonable certainty, such that an officer charged with the duty of executing a writ of possession could locate the property without exercising judicial functions. *See Zobel v. Slim*, 576 S.W.2d 362, 369 (Tex.1978); *Reid Estates Civic Club v. Boyer, Inc.*, No. 01–09–00282–CV, 2011 WL 6938513, at *14 (Tex.App.—Houston [1st Dist.] Dec. 29, 2011, no pet.) (mem. op.). The description of property in a trespass-to-try-title judgment is sufficient if a surveyor could go upon the land and identify the land described. *See Reid Estates Civic Club*, 2011 WL 6938513, at *14.

Kennedy argues that the property description in the judgment is conditioned on the tract being a strip or a gore, and that the tract is not a strip or gore. The property description covers "all strips, gores and property lying in or under the easterly one-half (½) of abandoned 65th Street lying northerly of Channelview Drive." We conclude that the judgment does not require the subject property to be a strip or a gore.

Forman asserts that the property subject to the judgment is the property lying in or under the easterly one-half (½) of abandoned 65th Street lying northerly of Channelview Drive and does not include any adjoining strips or gores. Nonetheless, the property description in the judgment arguably also might include strips or gores adjacent to this property. Therefore, we modify the judgment's property descrip-

tion to omit the reference to strips and gores. *See Butler v. Hanson*, 473 S.W.2d 934, 934 (Tex.1971) (modifying trespass-to-try-title judgment on appeal); *Dupnik v. Hermis*, No. 04–12–00417–CV, 2013 WL 979199, at *6 (Tex.App.—San Antonio Mar. 13, 2013, pet. denied) (affirming trespass-to-try-title judgment as modified) (mem. op.); *Steele v. McDonald*, No. 10–05–00266–CV, 2007 WL 2200008, at *4–6 (Tex.App.—Waco Aug. 1, 2007, pet. denied) (affirming trespass-to-try-title judgment as modified) (mem. op.).

As modified, the judgment's description of the subject property shall read as follows:

> The real property in the City and County of Galveston, Texas, specifically being the eastern one-half portion of 65th Street that lies adjacent to Lot 502, Section 1, Trimble and Lindsey Survey described in the City of Galveston's Ordinance No. 68–70 (attached to this Final Judgment) as "65th Street from the north right-of-way of Channelview Drive northerly to Galveston Bay" and more particularly described as follows:
>
>> All property lying in or under the easterly one-half (½) of abandoned 65th Street lying northerly of Channelview Drive.

Kennedy also argues that the trial testimony of Kennedy's expert, Kent McMillan, showed that there is a six-to-seven-foot discrepancy as to the location of the eastern boundary of 65th Street between a Luttrell survey made around 1900 and later surveys. But, the fact that surveyors may have made mistakes or made different determinations regarding the eastern boundary of 65th Street does not make the property description in the judgment insufficient.

With the above modification to the property description, the property subject to

the judgment can be identified with reasonable certainty, such that an officer charged with the duty of executing a writ of possession could locate the property without exercising judicial functions. *See Reid Estates Civic Club*, 2011 WL 6938513, at *14–16. Based upon the property description in the modified judgment, a surveyor could go upon the land and identify the land described in the judgment. *See Reid Estates Civic Club*, 2011 WL 6938513, at *14. Therefore, we conclude the modified judgment contains a sufficient description of the subject property. *See id.* Except to the extent of the modification to the property description, we overrule the sixth issue.

**F. Does Civil Practice and Remedies Code section 16.005 apply to this case?**

In its seventh issue, Kennedy asserts that Forman's claims are barred under Civil Practice and Remedies Code section 16.005, entitled "Action for Closing Street or Road," under which "a person must bring suit for any relief from the following acts not later than two years after the day the cause of action accrues ... the passage by a governing body of an incorporated city or town of an ordinance closing and abandoning, or attempting to close and abandon, all or any part of a public street or alley in the city or town, other than a state highway." Tex. Civ. Prac. & Rem. Code Ann. § 16.005(a) (West, Westlaw through 2015 R.S.). We review the trial court's interpretation of applicable statutes de novo. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655–56 (Tex.1989). In construing a statute, our objective is to determine and give effect to the Legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex.2000). If possible, we must ascertain that intent from the language the Legislature used in the statute and not look to extraneous matters for an intent the statute does not state. *Id.* If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex.1997). We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the Legislature chose. *See id.*

Under the unambiguous language of section 16.005, that statute does not apply to Forman's claims because Forman did not seek relief from the passage of an ordinance closing and abandoning, or attempting to close and abandon, all or any part of a public street or alley in a city or a town. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.005(a). Forman did not request or receive relief from City of Galveston Ordinance 68-70 or any other ordinance. The case Kennedy cites in support of this argument involves a predecessor statute and is not on point because in that case the plaintiff sought relief based on a city's alleged abandonment of a public street. *See City of Lubbock v. Merriwether*, 285 S.W.2d 261, 263, 265 (Tex.Civ.App.—Amarillo 1955, writ ref'd n.r.e.).

Concluding that Kennedy has not shown that as a matter of law that Civil Practice and Remedies Code section 16.005 bars Forman's claims, we overrule Kennedy's seventh issue.

### IV. CONCLUSION

The evidence is legally sufficient to support the jury's finding that in July of 2006, Forman was in actual possession of the Property that he had not abandoned. The trial evidence is legally insufficient to support an award of lost-profits damages, which was the only type of damages submitted to the jury. Therefore, we modify the judgment to delete the award of these damages.

In light of the trial court's granting of relief to Kennedy under Property Code section 22.041, the trial court erred in awarding Forman title to the improvements; therefore, we modify the judgment to remove all language giving Forman title to the improvements. The trial court also erred in denying Kennedy's request that the trial court delete from the judgment language requiring Kennedy to remove the improvements from the subject property "in a manner which allows [Forman] to fully utilize and access his Property from Channelview Drive or from the submerged portion of [Lot 502] (owned by [Forman])." We modify the judgment to delete this language. Having modified the judg-ment's property description to omit the reference to strips and gores, we conclude that as modified, the judgment contains a sufficient description of the subject property. Kennedy has not shown as a matter of law that Civil Practice and Remedies Code section 16.005 bars Forman's claims.

Accordingly, we modify the trial court's judgment in the ways stated above, and we affirm the judgment as modified.