

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00256-CV

———————————————

REGINALD ALLEN, Appellant

V.

BELL TEXTRON, INC., Appellee

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-336801-22

Before Kerr, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

This appeal arises from a jury verdict in a negligence lawsuit brought by appellant Reginald Allen against appellee Bell Textron, Inc. after he was injured while performing chemical-management work at a Bell facility in Grand Prairie. The jury found that Bell's negligence was not a proximate cause of Allen's injuries, and based on this finding, the trial court signed a take-nothing judgment in Bell's favor. Raising three appellate issues, Allen argues that the trial court erred by (1) sustaining Bell's special exceptions to his petition and narrowing the scope of his negligence claim to a single factual theory without giving him the opportunity to amend his pleading, (2) limiting the jury charge to that single theory of negligence instead of submitting a general negligence question, and (3) allowing Bell to cross-examine him regarding his workers' compensation benefits in violation of the collateral-source rule. We affirm.

## I. BACKGROUND

Bell manufactures helicopters, and at its Grand Prairie facility (Plant 5), it makes transmission parts for those helicopters. To ensure that its helicopters can operate in harsh conditions, Bell coats the transmission parts with cadmium metal to protect against corrosion. Before the cadmium can be applied, the parts must be cleaned with hydrochloric acid and cyanide.

Because acid and cyanide can cause a dangerous chemical reaction when mixed, they are kept in separate tanks. To ensure safety during the cleaning process, transmission parts are dipped into chemical tanks in a specific order—first acid, then

water, then cyanide. Additionally, the chemicals in each cyanide and acid tank must be maintained at a specific chemical-to-water ratio. When a tank's concentration level varies too much from the target ratio, a drain/clean/recharge (DCR) procedure must be performed.

During the DCR process, the chemical in the tank is drained into a separate container called a "tote" using a hose that is powered by a motorized pump. After the tank is drained, it is cleaned with water and then refilled with its designated chemical at the proper concentration level.

Bell contracts with Incora, a company specializing in chemical-management services, to oversee the chemicals used at Plant 5 and to perform DCR procedures when necessary. Allen worked for Incora as a chemical-material specialist at Plant 5.

On August 17, 2022, Bell's process engineer, Joe Vo, told Allen that he needed to perform a DCR on Tank V-111, an acid tank, because its chemical-to-water ratio was "out of spec." When Allen attempted to perform the DCR, he realized that the acid pump was broken. Allen contacted Vo, and he and Alex Ison, another Bell employee, came to inspect the pump. After confirming that the pump was not working, Vo instructed Allen to look for another pump to use and indicated that he and Ison would also look for one.

Allen found a caustic pump that had been used the previous day to remove cyanide from a tank. Because of the dangers of mixing cyanide with acid, the pump needed to be thoroughly washed out before it could be used to drain an acid tank.

3

Allen testified that he cleaned the pump before beginning the DCR process on Tank V-111. Nevertheless, some cyanide remained in the pump, and as soon as he began draining the tank, the cyanide reacted with the acid to produce a cyanide cloud that triggered the plant's cyanide alarm and caused the plant to be evacuated.

As the alarms sounded, Allen attempted to evacuate the area, but the fumes caused him to lose consciousness and collapse.[1] He struck his head on the edge of a metal cart, lacerating his scalp. He later developed symptoms consistent with a traumatic brain injury, including headaches, dizziness, blurred vision, and mood instability.

In September 2022, Allen sued Bell for negligence, alleging in his petition that a Bell employee had negligently instructed him to use a caustic pump to drain an acid tank and that this instruction had caused the chemical reaction and his resulting injuries. Based on this employee-instruction allegation alone, Allen asserted a laundry list of negligence theories, including negligence per se; negligent supervision, hiring, retention, and training; and "[o]ther acts so deemed negligence."

Given Allen's meager allegations, Bell could not determine the factual bases for his various negligence theories other than the negligent-instruction theory. It sought clarification through discovery, but Allen's responses revealed no new facts that

---

[1]At the time of the incident, Allen was not wearing a respirator—a piece of safety equipment that, according to one witness, would have "filter[ed] out the cyanide" from the air, enabling "him to exit [the facility] in an orderly manner."

would support his other negligence theories. Accordingly, Bell filed special exceptions asking that portions of Allen's petition be repleaded or struck. Instead of amending his petition, Allen filed a response urging the trial court to overrule Bell's special exceptions because his petition "provided fair and adequate notice for [Bell] to prepare a defense to [his] claims."

At the hearing on Bell's special exceptions, the trial court questioned Allen's counsel about the facts supporting each of Allen's various negligence theories.[2] Allen's counsel acknowledged that Allen "had no additional facts beyond those" recited in his petition and told the trial court that Allen "would not be repleading."

---

[2]Although the hearing on Bell's special exceptions was not recorded, the attorney representing Bell at the hearing signed an affidavit describing what happened, and Bell attached this affidavit to its response to Allen's motion for new trial. Because affidavits are competent evidence in the context of a new-trial hearing and because Allen did not object to the affidavit or otherwise controvert the facts stated therein, we may accept the affidavit's description of what transpired at the special-exceptions hearing as true. *See Dir., State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994); *Arellano v. Villegas*, No. 14-20-00332-CV, 2022 WL 2814874, at *2–3 (Tex. App.—Houston [14th Dist.] July 19, 2022, pet. denied) (holding that trial court erred by excluding affidavit offered in support of new-trial motion as hearsay because "in the context of a motion for new trial, the movant's affidavit is appropriate evidence for the trial court to consider even when the trial court conducts an evidentiary hearing"); *In re A.J.M.*, No. 11-20-00222-CV, 2021 WL 3923300, at *3 (Tex. App.—Eastland Sept. 2, 2021, no pet.) (explaining that when evaluating a new-trial motion's merits, a "trial court looks . . . to the record that is before it at the time—which includes the motion for new trial, any responses to the motion, and any affidavits or other evidence that may accompany the motion and responses"); *see also In re Marriage of Sandoval*, 619 S.W.3d 716, 721–22 (Tex. 2021) (holding that uncontroverted allegations in an affidavit supporting a new-trial motion should be accepted as true if they are within the affiant's personal knowledge, which "includes knowledge gained through firsthand experience or observation").

5

Accordingly, the trial court sustained Bell's special exceptions and signed an order limiting Allen's negligence claim to the theory that a Bell employee had "negligently instructed [him] to use a caustic pump." Before trial, Allen never objected to the special-exceptions ruling, amended his petition, or requested leave to do so.

More than fifteen months after the trial court sustained Bell's special exceptions, the parties tried the case to a jury. Question 1 of the charge asked the jury to determine whether "the negligence, if any, of [Bell, Allen, or Incora was] a proximate cause of injury to [Allen]." The charge separately defined the term "negligence" as applied to Bell, Allen, and Incora. In accordance with the trial court's earlier special-exceptions ruling, the charge instructed the jury that to find that Bell was negligent, it had to find (1) "[t]hat an employee of [Bell] instructed [Allen] to use a caustic pump" and (2) "that such instruction, if it was made, was negligence." Based on these instructions, the jury found that Bell's negligence had not proximately caused Allen's injury; rather, it found that Allen's injury had been proximately caused by his own negligence and the negligence of his employer, Incora. Accordingly, the trial court signed a take-nothing judgment in Bell's favor.

Allen filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

6

## II. DISCUSSION

### A. Special Exceptions

In his first issue, Allen contends that the trial court erred by sustaining Bell's special exceptions and by narrowing the scope of his negligence claim without affording him the opportunity to amend his petition. We disagree.

#### 1. Applicable Law and Standard of Review

Special exceptions are the proper vehicle for challenging a petition's legal or factual sufficiency. *See Brumley v. McDuff*, 616 S.W.3d 826, 831 (Tex. 2021). To be sufficient, a petition must "give[] fair and adequate notice of the facts upon which the pleader bases his claim." *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982). Thus, special exceptions are appropriate not only when the plaintiff has alleged "no cause of action" but also when the plaintiff has "alleged no basis of a ground of recovery [that] is a part of his cause of action." *See Garrett v. City of Wichita Falls*, 329 S.W.2d 491, 495 (Tex. App.—Fort Worth 1959, no writ); *see also In re C.S.*, 264 S.W.3d 864, 871–82 (Tex. App.—Waco 2008, no pet.) ("A special exception is the proper vehicle to challenge a pleading on the basis that 'though there is a legal rule which might be applicable, the petition omits one or more allegations essential to bring plaintiff's claim within its scope.'" (quoting *Godley Indep. Sch. Dist. v. Woods*, 21 S.W.3d 656, 660 (Tex. App.—Waco 2000, pet. denied)).

A trial court has broad discretion in ruling on special exceptions. *Ford v. Performance Aircraft Servs., Inc.*, 178 S.W.3d 330, 335 (Tex. App.—Fort Worth 2005, pet.

denied) (citing *Mowbray v. Avery*, 76 S.W.3d 663, 678–79 (Tex. App.—Corpus Christi–Edinburg 2002, pet. denied)). And we will reverse a trial court's ruling on special exceptions only if it has abused this discretion. *See id.*; *see also Connolly v. Gasmire*, 257 S.W.3d 831, 838 (Tex. App.—Dallas 2008, no pet.). A trial court abuses its discretion if its action is arbitrary, unreasonable, and without reference to any guiding rules or principles. *Connolly*, 257 S.W.3d at 838 (first citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); and then citing *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 876 (Tex. App.—Dallas 2005, no pet.)).

### 2. Analysis

Allen contends that the trial court abused its discretion in two ways when ruling on Bell's special exceptions: first by sustaining them at all and second by narrowing the scope of his negligence claim without giving him the opportunity to replead. We disagree on both fronts.

Allen's petition contained only the following factual allegations:

> This lawsuit is necessary as a result of personal injuries that [Allen] received on or about August 17, 2022. At that time, [Allen] was working at Defendant Bell['s] . . . Plant 5 . . . . Plant 5 had a broken acid pump. [Allen] was instructed to use a caustic pump by a Bell employee. At the time of the incident there was a waste management tote in near proximity, filled with chemicals, that was supposed to be empty. When [Allen] tried to use the pump as instructed, it caused a toxic chemical reaction. The chemical reaction caused [Allen] to pass out and to suffer multiple bodily injuries. At all times material hereto, [Allen] was working under the instruction of [Bell]. Due to [Bell]'s negligence, [Allen] suffered extensive and severe injuries.

8

Based on these scant allegations, Allen asserted a myriad of negligence theories, including

- negligence per se;

- negligent supervision of subcontractors;

- negligent supervision of employees;

- "fail[ing] to avoid and/or protect against work-related hazards";

- "fail[ing] to provide an adequately safe work environment for the work that [Allen] was hired to perform";

- "fail[ing] to ensure the safe operation of permitted machinery and/or vehicles, including requirements related to vehicle routing and weight limits";

- having "[n]egligently conducted active operations on the premises";

- negligent hiring and/or retention of employees;

- negligent training and/or supervision of employees, invitees, and subcontractors;

- "[a]cting in a manner below the applicable standard of care"; and

- "[o]ther acts so deemed negligence."

But from the meager factual allegations in Allen's petition, one cannot ascertain

- which statute or ordinance Allen alleged that Bell violated to support his negligence per se theory;[3]

---

[3]Indeed, in his appellate briefing, Allen still does not identify the statute or ordinance that Bell purportedly violated; rather, he vaguely references "applicable safety statutes and regulations." *See Stierwalt v. FFE Transp. Servs., Inc.*, 499 S.W.3d 181, 195 (Tex. App.—El Paso 2016, no pet.) ("In order to prevail on a theory of negligence per se, a plaintiff must first, and foremost, establish that the defendant violated a statute or ordinance.").

9

- what supervision Bell was required to provide its "subcontractors" or its unnamed employees and how it purportedly breached this duty to provide supervision;

- what employees Bell was purportedly negligent in hiring and how it knew or should have known that these individuals were incompetent or unfit;[4]

- what employees Bell was purportedly negligent in training or how its alleged failure to adequately train them caused Allen's injury;

- how Bell purportedly failed to protect Allen from "work-related hazards" in any manner unrelated to Allen's negligent-instruction-to-use-a-caustic-pump theory;

- why Allen's "work environment" was not adequately safe;

- how Bell failed to ensure the safe operation of "permitted machinery and/or vehicles including requirements related to vehicle routing and weight limits";

- which "active operations" Bell conducted and how those operations were negligent; or

- what the "applicable standard of care" is and how Bell's actions purportedly fell below it.

Accordingly, we cannot conclude that the trial court abused its discretion by sustaining Bell's special exceptions. *See Garrett*, 329 S.W.2d at 495; *see also Roark*, 633 S.W.2d at 810; *Johnson v. Bearfoot Cos.*, No. 02-23-00366-CV, 2024 WL 2202033, at *4 (Tex. App.—Fort Worth May 16, 2024, no pet.) (holding that appellants' petition

---

[4]*See Dangerfield v. Ormsby*, 264 S.W.3d 904, 912 (Tex. App.—Fort Worth 2008, no pet.) ("[A]n employer is liable for negligent hiring, retention, or supervision if it hires an incompetent or unfit employee who[ ] it knows, or by the exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others." (citing *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 49 (Tex. App.—Fort Worth 2002, no pet.))).

failed to "satisfy the fair-notice and Rule 91a standards" because it "did not allege any specific facts in support of [their participatory-liability negligence] theories' required elements" and instead "vaguely alleged" that the defendants had "breach[ed] unspecified 'duties' and 'covenants'").

Further, we reject Allen's contention that the trial court failed to give him the opportunity to amend his petition. When a trial court sustains special exceptions, a plaintiff "may either (1) amend its pleading to cure the alleged defects or (2) stand on its pleading and test the validity of the trial court's decision on appeal." *Suite 900, LLC v. Vega*, No. 02-19-00271-CV, 2020 WL 2608394, at *12 (Tex. App.—Fort Worth May 21, 2020, pet. denied). If a plaintiff wishes to amend its pleading, it bears the burden to seek any necessary leave to do so.[5] *Amador v. Tan*, 855 S.W.2d 131, 133 n.1 (Tex. App.—El Paso 1993, writ denied) (citing *Fuentes*, 825 S.W.2d at 778)); *see also CDS Enters., Inc. v. Myrad Real Estate, Inc.*, No. 14-97-00197-CV, 1999 WL 548226, at *12 (Tex. App.—Houston [14th Dist.] July 29, 1999, no pet.) (not designated for publication) ("Once special exceptions have been granted, the party against whom the special exceptions have been sustained has the burden to seek leave to amend its pleadings." (citing *Fuentes*, 825 S.W.2d at 779)). But even though more than fifteen

---

[5]Because the trial court's order sustaining Bell's special exceptions was signed more than seven days—indeed, more than fifteen months—before trial, Allen could have amended his petition without seeking leave of court. *See* Tex. R. Civ. P. 63; *cf. Fuentes v. McFadden*, 825 S.W.2d 772, 779 n.5 (Tex. App.—El Paso 1992, no writ) ("Due to the fact that the special exceptions were granted less than seven days before trial, [appellant] was required to seek leave of court before amending his pleadings.").

11

months elapsed between the court's ruling on Bell's special exceptions and the start of trial, Allen never amended his petition or sought leave of court to do so.[6] By declining to amend, Allen elected to stand on his pleading as filed and to retain the right to complain about the ruling on appeal. *See Fuentes*, 825 S.W.2d at 779 (citing *Hubler v. City of Corpus Christi*, 564 S.W.2d 816, 820 (Tex. App.—Corpus Christi 1978, writ ref'd n.r.e.)). Because Allen never attempted to amend his pleading or requested leave to do so, his contention that the trial court did not give him a chance to replead is unpersuasive. *See id.*

We overrule Allen's first issue.

---

[6]To the extent that Allen complains about the trial court's signing an order narrowing the scope of his negligence claim without first giving him the opportunity to amend his petition, we note that given Allen's counsel's statements at the special-exceptions hearing that Allen "had no additional facts beyond those" recited in his petition and that he "would not be repleading," the trial court could have reasonably concluded that granting Allen an opportunity to amend his petition was unnecessary because its defects were incurable, *see Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007); *Neff v. Brady*, 527 S.W.3d 511, 528 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (recognizing that "[g]enerally, when the trial court sustains special exceptions, it must give the pleader an opportunity to amend the pleading" but if "the pleading defect is of a type that amendment cannot cure," the court may dismiss the cause of action), or because Allen had already elected to stand on his pleading and test the trial court's special-exceptions decision on appeal, *see Suite 900, LLC*, 2020 WL 2608394, at *12; *Cruz v. Morris*, 877 S.W.2d 45, 47 (Tex. App.—Houston [14th Dist.] 1994, no writ) (explaining that "if a party refuses to amend" his pleading after special exceptions are sustained, "the trial court may strike the objectionable part of the pleading[]").

## B. Charge Error

In his second issue, Allen contends that the trial court erred by limiting the charge's negligence question to the negligent-instruction theory instead of submitting a broad-form, general negligence question to the jury. But as Allen acknowledges, the trial court is required to submit to the jury only those questions "raised by the written pleadings and the evidence." Tex. R. Civ. P. 278. Because the trial court had previously determined in its special-exceptions ruling that the negligent-instruction theory was the only negligence theory supported by Allen's pleading—which, as noted, he elected not to amend—and because we have already overruled Allen's first issue challenging the trial court's special-exceptions ruling, we cannot conclude that the trial court erred by submitting a negligence question that was limited to the negligent-instruction theory. *See id*; *see also Gibbins v. Berlin*, 162 S.W.3d 335, 341 (Tex. App.—Fort Worth 2005, no pet.) (recognizing that "a trial court may refuse a tendered [jury] question" if "the issue is not pleaded" (citing *Rivera v. Herndon Marine Prods., Inc.*, 895 S.W.2d 430, 433 (Tex. App.—Corpus Christi 1995, writ denied))).

We overrule Allen's second issue.

## C. Evidentiary Complaint

In his third issue, Allen contends that the trial court reversibly erred by allowing Bell to cross-examine him regarding his workers' compensation benefits in violation of the collateral-source rule.[7] We disagree.

### 1. Standard of Review

We review a trial court's ruling in admitting or excluding evidence under an abuse-of-discretion standard. *Richmond Condos. v. Skipworth Com. Plumbing, Inc.*, 245 S.W.3d 646, 664–65 (Tex. App.—Fort Worth 2008, pet. denied) (op. on reh'g) (citing *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000) (op. on reh'g)).

To obtain reversal of a judgment based on the erroneous admission or exclusion of evidence, an appellant must show not only that the trial court's ruling was in error but also that the error probably caused the rendition of an improper judgment. Tex. R. App. P. 44.1(a)(1); *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000); *Ledbetter v. Mo. Pac. R.R.*, 12 S.W.3d 139, 142 (Tex. App.—Tyler 1999, pet. denied). This standard does not require the complaining party to prove that but for the evidentiary ruling a different judgment would necessarily have resulted.

---

[7]Allen also argues that the admission of this evidence was unfairly prejudicial under Rule 403 of the Texas Rules of Evidence, but because he did not raise a Rule 403 objection at trial, he failed to preserve this complaint for our review. *See In re D.L.*, 641 S.W.3d 873, 885 (Tex. App.—Fort Worth 2022, no pet.); *see also* Tex. R. App. P. 33.1(a).

14

*Tex. Health Harris Methodist Hosp. Fort Worth v. Featherly*, 648 S.W.3d 556, 577 (Tex. App.—Fort Worth 2022, pets. denied) (citing *JBS Carriers, Inc. v. Washington*, 564 S.W.3d 830, 836 (Tex. 2018)). Rather, if erroneously admitted or excluded evidence was crucial to a key issue, the error was likely harmful. *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 873 (Tex. 2008). Determining whether a particular error is harmful depends on the particular case. *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009). In making this determination, we review the entire record. *Id.*

### 2. Analysis

The collateral-source rule "precludes any reduction in a tortfeasor's liability because of benefits received by the plaintiff from someone else." *Haygood v. De Escabedo*, 356 S.W.3d 390, 394 (Tex. 2011). The basis for the rule is "that a wrongdoer should not have the benefit of insurance independently procured by the injured party, and to which the wrongdoer was not privy." *Id.* at 395 (quoting *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 934 (Tex. 1980)). Thus, evidence of such collaterally sourced benefits is generally inadmissible. *See Taylor v. Am. Fabritech, Inc.*, 132 S.W.3d 613, 626 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). But if a plaintiff claims financial hardship, evidence that he has received collateral-source benefits may be offered to impeach his credibility as a witness. *Homman v. Kugler*, No. 11-14-00028-CV, 2016 WL 787365, at *5 (Tex. App.—Eastland Feb. 25, 2016, no pet.) (citing *Nat'l Freight, Inc. v. Snyder*, 191 S.W.3d 416, 423 (Tex. App.—Eastland 2006, no pet.)).

In the present case, Allen emphasized his financial distress during his direct testimony. As relevant here, he testified that his prescription medication had "stop[ped]" because he "couldn't afford . . . to get it filled [him]self" and "couldn't get anyone to fill it for [him]." Bell argued that this testimony opened the door for it to question Allen regarding the workers'-compensation benefits that he had received after sustaining his injury. Although the trial court determined that Allen had not opened the door to broad questioning about those benefits, it ruled that Bell could ask Allen limited questions specifically related to his employer's payment of his past medical expenses. And on cross-examination, Allen conceded that Incora had paid certain medical bills related to the injuries that he had sustained at Plant 5.

Allen argues that the trial court violated the collateral-source rule by allowing this cross-examination. *See Taylor*, 132 S.W.3d at 626. But even assuming that the trial court's ruling was erroneous, we cannot conclude that it probably led to an improper judgment. *See* Tex. R. App. P. 44.1(a)(1); *Able*, 35 S.W.3d at 617.

"[T]he theory behind the collateral[-]source rule is the concern that juries, when they are permitted to consider collateral benefits, will view a plaintiff's [damages] as a double recovery and adjust their verdicts accordingly." *Macias v. Ramos*, 917 S.W.2d 371, 374 (Tex. App.—San Antonio 1996, no writ). Thus, when "the jury does not reach the issue of damages, no harm arises from [the] erroneous admission of collateral[-]source evidence." *Padilla v. Sidney*, No. 04-99-00491-CV, 2000 WL 1532847, at *4 (Tex. App.—San Antonio Oct. 18, 2000, pet. denied) (not

16

designated for publication) (citing *Guerra v. Wal-Mart Stores, Inc.*, 943 S.W.2d 56, 61 (Tex. App.—San Antonio 1998, writ denied)); *accord Riggins v. Broach Stations, Inc.*, No. 14-94-00086-CV, 1996 WL 50596, at *2 (Tex. App.—Houston [14th Dist.] Feb. 8, 1996, no writ) (not designated for publication) (citing *Castro v. U.S. Nat. Res., Inc.*, 880 S.W.2d 62, 67 (Tex. App.—San Antonio 1994, writ denied)).

Here, the jury never reached the issue of damages because it found that Bell's negligence did not proximately cause Allen's injury. And even if it had reached the damages issue, it would not have considered past medical expenses—the only damages element to which the collateral-source evidence related—because Allen did not seek recovery for this category of damages. Accordingly, any error in the collateral-source evidence's admission was harmless.[8] *See Padilla*, 2000 WL 1532847, at *4; *Riggins*, 1996 WL 50596, at *2.

---

[8]Allen argues that because the admitted collateral-source evidence hurt his credibility, it was harmful even though the jury did not reach the issue of damages. But the only case that he cites to support this argument is inapposite. *See Big Bird Tree Servs. v. Gallegos*, 365 S.W.3d 173, 176–77 (Tex. App.—Dallas 2012, pet. denied) (recognizing that "the collateral[-]source rule reflects the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall to the tortfeasor" (cleaned up) and rejecting appellant's contention that it should not be required to pay for the reasonable value of the medical services provided to the appellee because they had been provided free of charge). Further, Allen's contention that the collateral-source evidence harmed his credibility is undermined by his assertions that it "did not contradict any statement [that he] made" or "rebut a false inference created" by his testimony. Accordingly, Allen's credibility-based harm argument is unpersuasive.

Additionally, while discussing the collateral-source evidence's admissibility with the parties' attorneys, the trial court hinted at the possibility that evidence that Incora

We overrule Allen's third issue.

### III. CONCLUSION

Having overruled all of Allen's issues, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: June 4, 2026

---

had paid for Allen's past medical expenses could affect the jury's liability decision—not just its assessment of damages—because Incora's payment of these expenses might be viewed as an acceptance of liability for Allen's injuries. But because Allen has not raised this argument, we need not—and therefore do not—address it. *See* Tex. R. App. P. 47.1; *Kennedy Con., Inc. v. Forman*, 502 S.W.3d 486, 496–97 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("[Appellant] has not argued in the trial court or on appeal that the trial evidence conclusively proves that [he] has 'a better title' to the Property than [appellee]. Therefore, we need not address this argument . . . .").